*Cumming & Hull,* contra.

---

SMITH *v.* ROGERS *et al.*

HILL, J. Under the pleadings it appears that the plaintiff has been so negligent in the execution of the instruments which she is seeking to cancel that equity will not aid her in setting them aside; and the case was properly dismissed on demurrer.

*Judgment affirmed. Fish, C. J., absent. Evans, P. J., and Lumpkin, J., dissent. The other Justices concur.*

JANUARY 15, 1916.

Equitable petition. Before Judge Sheppard. Tattnall superior court. September 19, 1914.

The plaintiff sought to have canceled three deeds, and to recover possession of certain land, with mesne profits, and damages for timber cut therefrom. Among other things, she alleged the following: W. U. Rogers, W. T. Rogers, and P. B. Hodges (hereinafter referred to by their initials) entered into a conspiracy to obtain from her by fraud a tract of land containing 187 acres, and to divide it. In 1894 or 1895 P. B. H. sought to have her execute to him a deed to the land, which she declined to do, being unwilling to sell the property; and she so stated to him. Afterward, in the year 1895, P. B. H. returned to her home and again asked her to sign a paper, stating that he desired to purchase the property. She declined to consent. Later on the same day he returned to her house "and proposed that they write their names upon a piece of paper which he then and there had and held in his hand, and see who could do the best writing [of] their names. Petitioner re-

plied that she was willing to write upon another sheet of paper. The said [P. B. H.] stated, 'No, put it on this,' that is, upon the paper he then and there had and held, which petitioner did." She did not know the contents of the paper, nor was it read in her hearing, nor would she have signed it had she known òr had reason to suspect that it was a deed of conveyance. P. B. H. wilfully tricked and misled her in causing her to place her name upon the paper. Being her brother-in-law, she did not believe that he would so deceive her. In fact the paper was a deed conveying 93-1/2 acres of the land. No consideration was paid to her, and the land was worth at least double the consideration recited in the deed. It was recorded on October 2, 1907. On the same day was recorded a deed from P. B. H. to W. T. R., bearing date December 14, 1895, and conveying 40 acres, forming a part of the 93-1/2 acres included in the deed signed by the plaintiff. P. B. H. was her brother-in-law, and the other two defendants were her cousins and cousins of each other. The plaintiff was "sick and ill, being practically an invalid from the year 1892 for quite a number of years, and was ignorant of such transactions, all of which facts were well known to the said" P. B. H. In 1895 W. U. R. undertook to have her execute to him a deed to the entire tract of 187 acres. This she declined to do. W. U. R. then requested her to execute to him a lease to the property. She agreed to permit him to use the land until she should call for it. A few days afterward W. U. R. returned to her house and requested her to sign a paper, which he stated was a lease to the land; and she signed it. In fact the paper was a deed conveying 93-1/2 acres of the land to W. T. R., being the other half not included in the deed to P. B. H. She was not informed and had no reason to suspect that the paper she signed was a deed. She did not know the contents of it, nor was it read to her; but she signed it believing it to be a lease to W. U. R. of the entire tract, and did not discover that a fraud or trick had been perpetrated upon her until about a year before bringing the suit. W. T. R. never had any conversation or communication with her relating to the purchase of the land, or any part of it. The deed alleged a consideration of $750, but no part of it has been paid to her, and the land was worth at least double that amount. W. T. R., who was acting through W. U. R., though this was unknown to the plaintiff, perpetrated a fraud upon her, suppressing

37

the fact that the paper was really a deed to W. T. R. The statement as to her having been an invalid from the year 1892, "for quite a number of years," was repeated. W. T. R. and P. B. H. have cut practically all of the timber upon the land, of the value of about $2,000, and have converted it to their own use. The land was cleared about 15 years before the suit was brought (which was on October 25, 1913). The fair rental value of it was $2 per acre, making $5,490.

By amendment it was alleged: The three defendants conspired to cheat her and obtain her land by fraud, without paying her any consideration therefor. They withheld the conveyances executed by her from record until 1907, a period of about 12 years, for the purpose of keeping concealed from her the fact that she had really executed deeds. They well knew, at and before the execution of the instruments, that on account of her weak physical condition, her ignorance of business transactions, and the relationship that existed between them, they could take an unconscionable advantage of her; and they did so. From the time of the execution of the deeds she lived about six miles from the land, and was practically an invalid, "unable to leave home until the year 1909, and absolutely unable to attend to any business transactions;" and though she saw the parties from time to time, none of them told her or intimated to her that she had executed deeds to P. B. H. and W. T. R. Had she known the fact, she would have instituted legal proceedings. During all the time she was under the belief that she had merely leased the land to W. U. R., and that she could and would obtain back the property when she should call for it, as was agreed. She was willing that he should use it, as she had no occasion to use it herself at that time, and so permitted it to stand under a lease, as she thought. She was willing that the land should be cleared, and believed that it was being cleared under a lease from her to W. U. R.; and she gave him permission to cut the timber so that the land would be cleared and cultivated. She never knew that P. B. H. and W. T. R. were cutting any of the timber until 1912, but believed during all the time which had elapsed that the timber was being cut by virtue of the authority given by her to W. U. R. under her lease to him, which he now claims was a deed of conveyance to 93-1/2 acres of land. The timber was cut from time to time, the first being cut soon after

W. U. R. obtained the paper which she thought was a lease. The exact date of the cutting, the amount which was cut, and the amount which was realized therefrom, she is unable to state,—all of which is in the peculiar knowledge of the defendants; but she believes that approximately 200,000 feet of timber was cut.

*W. G. Warnell* and *Edwin A. Cohen,* for plaintiff.

*Hines & Jordan* and *J. P. Moore,* for defendants.

LUMPKIN, J., dissenting. I can not concur in the judgment rendered in this case. Some of the allegations in the petition may appear rather improbable, but they are not impossible, and can not be declared untrue on demurrer. Accepting them as true, the case is made of a sick woman, practically an invalid for years, unfamiliar with business and having confidence in her kinsmen, and of a brother-in-law and two cousins, who, knowing these facts, deliberately conspired to defraud her out of her land, and succeeded in consummating the conspiracy. One of them obtained her signature to a deed under pretense of merely seeing which wrote the better hand. Another obtained her signature to a deed to another part of the same general tract of land under pretense that it was a lease of the land to him. The three shared the results of the conspiracy, either in land or timber. Sickness alone may not disqualify one from making a contract, unless it impairs the faculties beyond the power to contract; but illness, lack of business knowledge, and confidence in relatives may affect the question of what constitutes negligence under given circumstances. It can not be said as matter of law that an invalid woman must suspect her brother-in-law and cousins of being knaves seeking to defraud her, at the risk of forfeiting the aid of a court of equity. Mere negligent signing of a paper without reading it, and without fraud by the other party, or emergency, or other sufficient reason, prevents relief; but what is negligence depends on the facts of the case, and I do not think it can be declared that this woman was, as matter of law, so negligent as to bar her. If the case can stand as to either paper, it is not demurrable as a whole. Her reasons for delay in discovering the fraud and bringing the suit can not be declared insufficient on demurrer. I am authorized to state that Evans, P. J., concurs in this dissent.